UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JESSICA BELMUDES                                                                    PLAINTIFF

V.                                    NO. 4:20-cv-00445-JTR

COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION                                      DEFENDANT

## ORDER

### I.   Introduction:

Plaintiff, Jessica Belmudes ("Belmudes"), applied for supplemental security income benefits on March 1, 2017, alleging disability beginning on May 1, 2015. *(Tr. at 12)*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on May 16, 2019. (Tr. at 21). The Appeals Council denied Belmudes request for review (Tr. at 1), making the ALJ's denial of Belmudes' application for benefits the final decision of the Commissioner.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

### II.   The Commissioner's Decision:

The ALJ found that Belmudes had not engaged in substantial gainful activity

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

since the application date of March 1, 2017.[2] (Tr. at 15). At Step Two of the five-step analysis, the ALJ found that Belmudes had the following severe impairments: degenerative changes of the lumbar and cervical spine, anxiety disorder, affective disorder, and PTSD. *Id*.

After finding that Belmudes's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Belmudes had the ability to perform work at the light exertional level, except that: (1) she can only occasionally climb ramps and stairs and stoop, kneel, crouch, and crawl; (2) she can only occasionally reach overhead; (3) she can only occasionally be exposed to extreme cold and vibration; (4) she can never be exposed to unprotected heights or dangerous moving machinery, and can never operate a motor vehicle at work; (5) she can understand and remember simple instructions and can sustain attention and concentration to complete simple tasks with regular breaks every two hours; (6) she can have occasional casual interaction with supervisors and coworkers, but can have no interaction with the public; and (7) she can adapt to routine work conditions and occasional work place changes that are gradually introduced. (Tr. at 16).

The ALJ determined that Belmudes was unable to perform her any of her past

---

[2] For supplemental security income benefits, the beginning of the relevant time-period for determination of eligibility for benefits is the date that the application was filed. (Tr. at 12).

relevant work. (Tr. at 20). Relying upon Vocational Expert ("VE") testimony, the ALJ found that, based on Belmudes' age, education, work experience and residual functional capacity ("RFC"), jobs existed in significant numbers in the national economy that she could perform, including positions as housekeeping cleaner, assembler, and inspector. (Tr. at 21). Thus, the ALJ concluded that Belmudes was not disabled. *Id.*

### III. <u>Discussion</u>:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning

of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B.  Belmudes' Arguments on Appeal

Belmudes contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ failed to fully develop the record, he did not properly evaluate medical opinions, and he failed to identify or resolve a conflict at Step Five. The Court finds support for Belmudes' arguments.

Belmudes alleged mental impairments, and the record contains evidence suggesting she had significant psychiatric limitations. However, the Court will limit its discussion to her physical impairments, which provide the basis for reversal.[3]

---

[3] *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020)("Although our detailed discussion is

Although Belmudes did not allege physical impairments at the initial application stage, she sought treatment during the relevant time-period for lumbar and cervical pain, including regular treatment with Hydrocodone, physical therapy, and steroid injections. (Tr. at 35-36, 275, 373-374). In November 2017, Belmudes' PCP, Dr. Brenda Ashley, M.D., diagnosed her with cervicalgia based on tenderness in the cervical spine and cervical muscles. (Tr. at 526). Dr. Ashley referred Belmudes to physical therapy. Between November 2017 and July 2018, Belmudes participated in physical therapy 21 times, where she was diagnosed with cervicalgia, stiffness of unspecified joints, muscle spasm, muscle wasting, and atrophy. (Tr. at 387-462). Belmudes improved with physical therapy.

A lumbar MRI from June 2018 showed small disc bulge, multi-level intervertebral disc desiccation and disc height loss, with a left herniated disc protrusion possibly affecting the nerve root at L4-L5. (Tr. at 375-377). Electromyography testing for extremity pain and paresthesia in October 2018 was normal, but Belmudes' Little Rock Diagnostic Clinic doctor suggested she suffered from radiculopathy. (Tr. at 545-546). A follow-up cervical MRI showed minimal left foraminal narrowing secondary to joint hypertrophy at C5-C6 and C6-C7. (Tr.

---

targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

at 548).

Dr. Ashley filled out a medical source statement on November 15, 2018 stating that Belmudes could perform less than sedentary work: she could lift and carry 20 pounds occasionally and could sit less than two hours in an 8-hour workday with 10-minute breaks (Tr. at 550-554). Dr. Ashley said that Belmudes was unable to reach in all directions, and she would need frequent, unscheduled breaks. *Id*. The ALJ gave Dr. Ashley's opinion marginal weight, finding it unpersuasive because it was not consistent with the record.[4]  (Tr. at 20).

Belmudes testified that she could lift no more than 15 pounds and had trouble sitting and standing. (Tr. at 33-47). She said her neck pain gave her migraines, and that Hydrocodone made her very drowsy. *Id*.

Typically, in cases with physical impairments, there are evaluations from Disability Determination Services medical experts, who review the records and assess very specific functional limitations. An ALJ relies on these "highly qualified experts" in Social Security disability evaluation. See 20 C.F.R. § 404.1513a. There

---

[4] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is persuasive if it is sufficiently relevant to and consistent with the medical evidence as a whole. *See Phillips v. Saul*, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

were no such opinions in this case. The ALJ himself said that the case was "unusual" because no physical impairments were alleged, but at the time of the hearing there was evidence pointing to physical impairments; the ALJ also spent some time asking Belmudes about her physical impairments. (Tr. at 33-37). The ALJ said that [he] would have to explore with doctors "something else," related to Belmudes neck pain. (Tr. at 37). But the ALJ never obtained "something else"; he did not obtain any medical expert opinion about functional limitations. He dismissed Dr. Ashley's opinion, and then limited Belmudes to light work, even though Belmudes testified that she could perform no more than sedentary work, because she could not lift more than 15 pounds (Dr. Ashley's opinion confirms that). (Tr. at 16, 41). At the initial level of review before the Social Security Administration, a vocational specialist, who was not a medical doctor, suggested Belmudes could perform sedentary, not light, jobs. (Tr. at 85-86). While this is vocational, and not medical, evidence, it suggests that the RFC for light work was erroneous.

In this case, the ALJ crafted an RFC for light work, without any medical opinion on which to base that determination (he rejected Dr. Ashley's opinion suggesting at the most sedentary work). (Tr. at 20). This Court has found error in such a scenario. *See Stewart v. Berryhill*, NO. 3:16-CV-00093-JTR, at *6 (E.D. Ark., May 11, 2017)(reversal required where ALJ rejected outright the physician opinions

and the record contained no opinion from an examining medical source). An ALJ may not rely upon his own inferences when there is no assessment of functional limitations. *See Lamb v. Social Security Administration*, No. 3:17-CV-00284-BD, at *5 (E.D. Ark., Nov. 1, 2018). The disability review process engages medical experts for a purpose: they address, in terms governed by the Commissioner's regulations, function-by-function physical limitations. 20 C.F.R. § 404.1513a. Their opinions are the first step in the development of the medical record. Because there were no such opinions, and because the ALJ himself admitted that he should further explore a doctor's opinion, the Court finds that the record was not fully developed. 20 C.F.R. § 404.1512(e); *Nevland v. Apfel*, 204 F.3d 853, 857-8 (8th Cir. 2000)( In light of the lack of opinion evidence, the ALJ had a duty to contact the treating sources or order a consultative examination). The RFC determination is a medical question, and the "key issue is not whether an impairment exists, but how the impairment affects [the claimant's] ability to function physically." *Id*.

There is also a flaw in the ALJ's ultimate Step Five determination. The RFC stated that Belmudes could occasionally reach overhead. (Tr. at 16). The only medical opinion about reaching, from Dr. Ashley, said that Belmudes could not reach in any direction, so one wonders how the ALJ arrived at the RFC. That problem is compounded by the fact that the VE identified jobs for Belmudes that

required frequent, not occasional, reaching. This presented a conflict between the DOT and the VE testimony (the jobs identified had a requirement above and beyond the RFC limitation).[5] The VE recognized the potential conflict, and said that "the DOT does not address decreased reaching, so I have addressed the occasional overhead reach based on job shadowing and experience."(Tr. at 47-48). In several cases from this district, the Court has held that a conflict may not be resolved by a VE citing to his experience; a more detailed explanation from the VE is required. *See Humphrey v. Berryhill*, 2019 U.S. Dist. LEXIS 50243 at *17 (E.D. Mo., March 26, 2019)(the VE provided "no insight into the issue"); *Denton v. Saul*, 2020 U.S. Dist. LEXIS 135200 (E.D. Ark., July 30, 2020); *Manuel v. Saul*, 2020 U.S. Dist. LEXIS 195996 (E.D. Ark., Oct. 22, 2020). The ALJ failed to carry his burden at Step Five.

## IV. <u>Conclusion</u>:

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial

---

[5] Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); see Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the record was not fully developed and the ALJ did not resolve a conflict at Step Five.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 22nd day of April, 2021.

_____
UNITED STATES MAGISTRATE JUDGE